John P. A. BLANKENSHIP, Appellant,

v.

E. F. SUTHERLAND, Appellee.

No. 15493.

Court of Civil Appeals of Texas.

Dallas.

May 8, 1959.

Rehearing Denied May 29, 1959.

Strasburger, Price, Kelton, Miller & Martin and Royal H. Brin, Jr., Dallas, for appellant.

Yarborough, Yarborough & Johnson, Dallas, for appellee.

YOUNG, Justice.

This is a suit for damages (personal injuries) allegedly sustained in an automobile collision. Involved were the cars of plaintiff Sutherland and defendant Blankenship, occurring May 31, 1957, at the intersection of Jackson and Austin Streets, Dallas. Upon trial to a jury and their answers to special issues, a plaintiff's judgment was

rendered for $8,000, interest and costs. Defendant has appealed from said final order after overruling of amended motion for new trial.

Points of appeal are now listed: The court's error, (1) "in refusing to grant defendant's motion for a mistrial timely presented after plaintiff's witness, Dr. Clark, injected the existence of insurance into the case;" (2) "in granting judgment upon an excessive award of damages;" (3) "in submitting Special Issue No. 9 over objection that there was no evidence whatsoever in the record that the hospital expenses inquired about were necessary;" (4) "in refusing to submit defendant's requested Special Issues No. A–1 and A–2, which were in accordance with defendant's pleadings."

■ These points will be discussed in order. During direct examination by plaintiff's counsel of his own witness Dr. Clark the following occurred:

"Q. What was the amount of your bill, Doctor? A. Our charges there for office calls, X-rays and hospital treatment was $159.00, total.

"Q. And over what period of time was that, Doctor? A. That was from June 3 to September 23 when I wrote this letter *for the insurance company,* that it was our opinion that he would have permanent partial disability.

"Q. All right." (Emphasis ours.)

At that juncture, counsel for defendant approached the bench and moved for a mistrial. The jury was then excused with ensuing discussion between court and respective counsel, defendant counsel being first requested to dictate his motion, as follows:

"Now comes the defendant, John P. A. Blankenship and moves this Honorable Court to grant a mistrial herein for the reason that during the testimony of Dr. Arthur Clark, a witness for the plaintiff, and upon direct examination by Counsel for plaintiff, the

doctor volunteered a statement that he had made a report for the insurance company in this case. The precise words being as stated in the record above and that such volunteer statement on the part of the doctor who is plaintiff's witness and upon direct examination by plaintiff's counsel, is highly prejudicial and is to the effect of informing the jury that the defendant is protected by liability insurance, and that such constitutes reversible error and cannot be cured by an instruction to disregard. And that no adequate relief whatever is available to the defendant, nor can the defendant obtain a fair and impartial trial with the jury after such statement has been made in the presence of the jury and heard by each of them. Wherefore the defendant respectfully prays this Honorable Court to grant a mistrial herein and discharge this jury and let us proceed with another trial.

"The **Court:** Let the record show that after a conference with Counsel, and it being considered that the doctor did not state whether the report to the insurance company was for the purposes of covering the hospitalization or surgical benefits under a personal policy of the plaintiff, or whether there was reference to the insurance company of the defendant, the Court overruled the motion of the defendant with the statement that the jury would be instructed in this regard whereupon the Court instructed the jury as follows: Ladies and Gentlemen: I will instruct you at this time that you will not consider in this case whether the plaintiff or the defendant has any insurance coverage or any financial responsibility. Therefore, you are not to consider for any purpose the last statement from the Doctor about the report to a company. In other words, this is a suit between E. F. Sutherland and John P. A. Blankenship, and you are not concerned with arrangement either

or both of these parties made. Therefore, you will not consider for any purpose the last statement of the Doctor about the report to a particular individual or company. All right, proceed.

"The Court: Anything else you want in the record, Gentlemen?

"Mr. Johnson: If the Court please, I think you have covered it. I want the record to show that the Court * * * that is, I want to be sure that the Court ought not to grant him a bill showing the doctor's statement referred to the insurance company in this case. That was the language of his motion, that the doctor's answer was to the effect that he made a report to the insurance company in this case, meaning the case here on trial, and as I think you have pointed out adequately enough, but it cannot be done too carefully that the doctor's statement does not carry that necessary implication, but as point out by the Court, and I think more reasonably than the other, that it referred to some insurance that the plaintiff in this case had rather than the defendant's, because it is not to be assumed that a man's personal physician is making a report to the defendant's in the case.

"The Court: Let the record further show that plaintiff's counsel, during the conference and after the motion of the defendant's, asked permission of the court to interrogate the witness before the jury regarding the question of making a report for a hospitalization or an accident insurance policy which might have been carried by the plaintiff himself, but that the Court would not permit plaintiff's counsel to go further into the matter, and instructed the jury in the words as shown heretofore in this record.

"Mr. Carlton: I would like for the record to also show an objection to the instruction given for the reason that it only emphasizes the question of in-

surance as raised by the doctor's testimony and that it did not and could not overcome the prejudice and harmful effect and only emphasizes the same.

"Mr. Johnson: I think the record should show here that this is the first time that objection is made. It was not made at the time."

Upon return of the jury, they were given the instruction as above indicated and the trial proceeded.

Above reflects the entire record relative to the error complained of; it not being claimed that the jury thereafter discussed anything about insurance. It further appears that the mention of insurance by the witness was casual and inadvertent, not elicited by appellee's form of inquiry; the statement not revealing whether the insurance company mentioned was appellant's rather than the insurer, if any, of appellee. "It is a matter of common knowledge that juries are more inclined to render verdicts against defendants, and for greater amounts, if they know or have reason to believe that the defendants are protected by insurance. Judicial notice will be taken of this fact. Hence, where the jury are informed that an insurance company, and not the defendant named, is to bear the loss, and where such information, not in evidence, has influenced the verdict, the rule that calls for a reversal because of the injection into the jury's deliberation of extraneous matters is particularly applicable." 41–B Tex.Jur. § 310, p. 381.

Citing numerous cases appellant relies on above rule, thus generally stated that the injection by plaintiff of insurance into a damage suit is ipso facto harmful and constitutes reversible error. However as early as 1929 in D. & H. Truck Co. v. La-Vallee, Tex.Civ.App., 7 S.W.2d 661, 663, instances are cited where like error was deemed curable without reversal. The court there said: "The cases in which reversals were not allowed contained one or more of the following elements: The issue was inadvertently or incidentally injected in the

case, and the jury instructed not to consider it; it was injected in the heat of argument, was promptly withdrawn and the jury instructed not to consider it; the jury were instructed not to consider it, and it did not appear to have an appreciable effect on the verdict; it manifestly had no effect on the verdict; it arose in the voir dire examination of the jury, as to their interest in casualty insurance companies, and was held not improper, under Dow Wire Works, Co. v. Morgan, Ky., 96 S.W. [530], 533."

The rule just quoted has been followed in identical situations, and later cases; as illustrated in Stein v. Boehme, Tex.Civ.App., 302 S.W.2d 663, 664, with the result that Point 1 under discussion should likewise be overruled. Said the Court in Stein's appeal: "The rule, however, has no application in this case. The statement of the witness that 'two adjusters came out' does not identify the employer of the adjusters. There was no indication that they represented an insurance company carrying an indemnity insurance coverage for appellant. Insofar as the record shows they might have represented the insurer, if any, of appellee, Boehme, in which case there would certainly be no injury to appellant Stein. In addition the questions and answers as above set out clearly show that the statement of the witness concerning adjusters was inadvertently made and not responsive to any question of appellee's attorney."

Moreover, Rule 434, Texas Rules of Civil Procedure has application. In Walker v. Texas Employees Insurance Association, 291 S.W.2d 298, 301, involving like extraneous matter, our Supreme Court had this to say: "Before an error may be made the basis of reversing a trial court judgment the appellate court must be satisfied that the error complained of 'was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment in the case.' Reversal may not be predicated upon a simple showing that error occurred and that the jury returned a verdict in some respects favorable to the party the error was reasonably calculated to help. If it could, the further provision of Rules 434 and 503 that it must also appear that the error 'probably did cause, the rendition of an improper judgment' would be meaningless and pointless." (Holding further that such determination should be made from the examination of the record as a whole.)

■ Appellant strongly argues excessiveness of jury verdict under the facts and circumstances of this case; mainly that the sum of $8,000 could have been arrived at only "by prejudice, sympathy and bias on part of the jury, strengthened by their consideration of insurance on the part of the defendant." Plaintiff had testified to injury in lower part of back, resulting from force or jar of the collision, described by his doctor as "a narrowing between the fifth lumbar verterbrae and the sacrum". He was employed as a mechanic for Southern Plaza Express Company at time of accident, over 78 years of age, employment terminated by retirement on September 1, 1957. Appellant points to these further facts in this connection: that plaintiff therefore had only a few months between date of injury, May 31, 1957 and retirement for claim of any loss of earning capacity; his own doctor attributing part of the back pain to pre-existing arthritis; that Sutherland did not go to a hospital until June 3, stating to an investigating officer at time of accident that he was not hurt; and that according to defendant, impact of the colliding cars was not of great force.

On the other hand, plaintiff testified to having felt immediate pain following the collision, from "base of head, clear down my back"; of telling defendant so, going home and taking care of self there until visiting his doctor the Monday following, then going to Samuels Clinic and St. Paul's Hospital; remaining there thirteen days under traction treatment; that he has had to wear a heavy steel brace ever since for back support; of continually suffering pain and discomfort, it interfering with sleep; that he had not worked since the accident

and had not been able to work; that theretofore he had been strong, active and healthy. It is not disputed that he had earned $2,354.77 for the current year to date of injury, and $5,491.57 for the previous year. Employees of the same department as plaintiff testified to his good physical condition prior to the accident, working regularly on his job of hanging metal and trailer walls, installing the finished moldings, and other tasks; hearing no complaint from him of body ailments; and of his not being on the job since said date.

Dr. Clark, plaintiff's doctor, testified at length concerning the nature and extent of his injuries; that X-ray examinations indicated a narrowing between fifth lumbar vertebra and sacrum; practically no space between these vertebrae; that in his opinion this diminished spacing probably explained plaintiff's leg pains, the disc at this level being pushed back against the nerve; and to inability of nature to regenerate such a condition; and that the described collision of automobiles would likely result in the kind of back injuries of which Sutherland complained. Dr. Clark further testified to applying traction to plaintiff's back for relief of nerve pressure, supplying him with a brace for back on leaving hospital to prevent re-occurrence of disc trouble; stating with reference to further disability that he had continued to observe the patient's progress and in his opinion Sutherland's incapacity to work was permanent. The medical bill was $153; for hospital stay and services, $147.40.

To the contrary of appellant's claim of excessiveness we conclude that the jury award, though liberal, was not against a preponderance of the testimony as a whole. Despite his advanced years, plaintiff was shown to have an actual earning capacity of approximately $6,000 per year; and that he would have continued on the job; his retirement being due to inability to work and earn money on account of injuries sustained in the May 1957 collision. Aside from this, he was entitled to reimbursement for pain and suffering, past and future. "The jury in a personal injury action may exercise much latitude in fixing the amount of damages, and the court will interfere only when the discretion has been abused." T. & G. Ry. Co. v. Hall, 58 Tex.Civ.App. 598, 125 S.W. 71, 72 (writ ref.); 3–B Tex. Jur. § 944, p. 467. The $147.40 charge for hospitalization was presumably included in the jury award; and defendant excepted to the court's charge on ground that no evidence was adduced of the necessity for such cost. Clearly a basis therefor is found in the statements of Doctor Clark, which were in no wise disputed. It is implicit in the testimony of this witness that the traction treatment and repeated x-ray examinations necessitated the facilities of a hospital.

Lastly, appellant complains of the court's refusal of defensive issues A–1 and A–2, being general inquiries relative to contributory negligence on part of plaintiff Sutherland. In this connection defendant had pled: "For further answer, if such be necessary, Defendant would show that at and immediately prior to the time of the matters and things complained of in plaintiff's petition, E. F. Sutherland was guilty of negligence and that such negligence was the proximate cause of the collision in question." The court's charge submitted specific issues concerning the acts and omissions of plaintiff at the time; to wit: on excessive speed and failure to properly apply brakes, to steer vehicle to his left, and to keep a proper lookout, all answered in the negative; the jury also finding that the collision was not the result of an unavoidable accident. Appellant voiced no objection to thus submitting specifically all issues raised by the evidence bearing on contributory negligence; which issues as a whole comprehended appellant's general allegation with respect to plaintiff's alleged acts and omissions. Quite obviously, to allow the matter of plaintiff's negligence vel non to again be submitted in general form would constitute a dual submission involving iden-

tical grounds of defense to which a party is not entitled. The point is overruled.

No error deemed reversible appears in this record and the judgment under review is accordingly affirmed.